**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RIZVAN MIRZA, | ) | CASE NO. 1:23-cv-263 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| DATATRAK INT'L, INC., *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

**I. Procedural Background**

Plaintiff Rizvan Mirza has filed a four-count Complaint against Defendants Datatrak International, Inc. and Fountayn LLC. (R. 1). In Count One, Plaintiff alleges a conversion claim against Defendant Datatrak only. (R. 1, PageID# 5-6). Count Two asserts a replevin claim against Defendant Datatrak only. *Id.* at PageID# 6. Count Three alleges an unjust enrichment claim against Datatrak only. *Id.* at PageID# 6-7. Finally, Count Four alleges successor liability against Defendant Fountayn. *Id.* at PageID# 7-8.

Now pending are Defendants' Motion for Summary Judgment (R. 23), and Plaintiff's Motion for Partial Summary Judgment (R. 24). After opposition and reply briefs were filed, Magistrate Judge Reuben J. Shepard issued a Report and Recommendation (R&R), which recommends that: (1) Defendants' Motion for Summary Judgment (R. 23) be granted in part and

denied in part; and (2) Plaintiff's Motion for Partial Summary Judgment (R. 24) be denied. Each side filed objections (R. 31 & 32), and responses to the objections. (R. 33 & 34). This matter is ripe for the Court's consideration.

## II. Legal Standards

**A. Standard of Review for Magistrate Judge Report and Recommendations**

The applicable standard of review of a magistrate judge's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court conducts a *de novo* review. Federal Rule of Civil Procedure 72(b)(3) states:

> *Resolving Objections*. The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The text of Rule 72(b)(3) addresses only the review of reports to which objections have been made, but does not specify any standard of review for those reports to which no objections have lodged. The Advisory Committee on Civil Rules commented on a district court's review of unopposed reports by magistrate judges. In regard to subsection (b) of Rule 72, the Advisory Committee stated: "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 Advisory Committee's notes (*citing Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879)).

"A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *accord Austin v. Comm'r of Soc. Sec.*, 2021 WL 1540389, at *4 (N.D. Ohio, Apr. 19,

2021) (finding that a general objection that merely restates an argument previously presented or simply voices a disagreement with a magistrate judge's suggested resolution "has the same effects as would a failure to object.") (citations omitted); *United States v. Dawson*, 2020 WL 109137, at *1 (N.D. Ohio, Jan. 9, 2020) ("the Court is under no obligation to review de novo objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs.")

Furthermore, "litigants cannot be permitted to use litigation before a magistrate judge as something akin to spring training exhibition game, holding back evidence for use once the regular season begins before the district judge." *Hous. Works, Inc. v. Turner*, 362 F. Supp. 2d 434, 438 (S.D.N.Y. 2005) (finding that after having the opportunity to present relevant evidence concerning a motion for summary judgment, "[a]bsent a most compelling reason, the submission of new evidence in conjunction with objections to the Report and Recommendation should not be permitted.")

**B. Summary Judgment Standard**

Summary judgment is appropriate only if the moving party demonstrates there is no genuine dispute of material fact on an issue that would entitle the movant to judgment as a matter of law. Fed.R.Civ.P. 56(a). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In this context, a court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge….” *Anderson*, 477 U.S. at 255. Nevertheless, a disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

"The movant must initially show the absence of a genuine issue of material fact. The movant need not produce evidence to show this absence; instead, it may discharge its burden by pointing out to me an absence of evidence to support the nonmovant's case." *Starr v. Wainwright*, No. 3:19-CV-2934, 2023 WL 5153436, at *7 (N.D. Ohio Aug. 10, 2023) (Carr, J.) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).

## II. Summary of Facts

The R&R set forth the facts identified by the parties as follows:

This case concerns 24,915 shares of restricted Datatrak common stock issued as compensation for Mirza's service on Datatrak's board of directors from 2017 through 2020. Mirza also includes successor liability claims as to Fountayn, alleging that Fountayn is a successor in interest to Datatrak and is liable for Datatrak's obligations. (Compl., ¶ 52).

In 2016, before Mirza joined, the board of directors consisted of Alireza "Alex" Tabatabai, James R. Ward, and Jack H. Jacobs. (ECF Doc. 23-1, Affidavit of Alireza Tabatabai ("Tabatabai Aff."), ¶ 7). Mr. Tabatabai has been Chairman and Secretary of Datatrak's Board of Directors since January 2016 and served as its President and CEO since December 2021. (Tabatabai Aff., ¶¶ 2, 5).

4

At the June 1, 2016 meeting,[1] the Datatrak Board of Directors adopted a director compensation policy ("Compensation Policy"). (Tabatabai Aff., ¶ 8). The Compensation Policy provides:

> The directors discussed proposed director compensation. After discussion, and after a motion was duly made and seconded, the directors voted unanimously to approve the following:
>
> - Board compensation of [sic] in an amount to be determined by the board in its sole and exclusive discretion and subject to change at any time;
>
> - The Board may in its sole and exclusive discretion provide restricted Company common stock ("Stock") in lieu of cash. If a director desires to receive Stock in lieu of cash, it is solely and exclusively in the discretion of the Company and nothing entitles a director to receive Stock;
>
> - In order to protect the best interests of the Company and its shareholders and to manage the Company's affairs in such a way that its shares may become more valuable over an extended period of time, directors desiring to receive Stock shall be subject to restrictions the Company places on Stock awarded. Any violation may result in the cancellation of Stock or forfeiture of Stock and Stock reverting to the Company;
>
> - If a director becomes unable to perform one or more of the essential duties of a director, all as determined by the Board, or if a director is terminated or removed for any reason other than death or disability, the Stock shall immediately be forfeited to the Company unless otherwise determined by the Board;
>
> - If a director engages in misconduct, in the sole and exclusive discretion of the Board, such as but not limited to: self-dealing, disclosing confidential information, disclosing trade secrets,

---

[1] It bears noting that Plaintiff's affidavit denied ever seeing the Compensation Policy enacted during the June 1, 2016 Board Meeting that predated his tenure. Plaintiff's affidavit states: "I have seen the purported June 1, 2016, Datatrak Board Minutes Defendants tendered with their Motion for Summary Judgment. I had not seen that document while I was a member of Datatrak's Board of Directors or at any time prior to this Litigation. Further, at no time while I was a member of Datatrak's Board of Directors did Defendants disclose to me the existence of that document." (R. 26-2, PageID# 213, ¶10).

> breaches any contract, breaches or violates any fiduciary obligation to the Company, engages in unlawful trading of securities of the Company or of another company, any conflict of interest, any disruptive behavior that detriments the Company, or any other acts or omissions that in the sole and exclusive discretion of the Board harm the Company or adversely affect the Company, Stock may be forfeited and revert to the Company;
>
> - Any violations of the Company's policies, in the sole and exclusive determination of the Company, or any other acts or omissions that reflect poorly upon the Company or cause the Company any harm, in the sole and exclusive discretion of the Company, may result in the cancellation of Stock or forfeiture of Stock to the Company.

(*Id.*; ECF Doc. 23-1, Exh. 1, PageID 159-60). Datatrak's President and CEO was vested with the authority to enforce the Compensation Policy. (Tabatabai Aff., ¶ 10). In 2017-2020, during the time Mirza served on the board, Datatrak's board members received compensation of $32,000 per year, which was available either as a cash payment or as equivalent shares in Datatrak stock. (ECF Doc. 24-1, Affidavit of Rizvan Mirza ("Mirza Aff."), ¶¶ 7-8).

In late 2016, Tabatabai invited Mirza to serve on the Datatrak board of directors. (Mirza Aff. ¶ 4). Mirza was elected to the Datatrak board on December 1, 2016 for a two-year term in the first quarter of 2017 and was reelected for a second two-year term in the first quarter of 2019. (Mirza Aff., ¶¶ 6-7, Tabatabai Aff., ¶ 11). At the annual shareholders meeting held on October 28, 2020, Mirza ran for reelection, but Datatrak's shareholders declined to reelect him and chose to elect a new director to the Board. (Mirza Aff. ¶ 10, Tabatabai Aff., ¶ 14). Thus, Mirza served on Datatrak's board of directors from early 2017 through late 2020. (Mirza Aff. ¶ 12).

Mirza elected to receive his compensation in stock worth $32,000 per year. (Mirza Aff., ¶¶ 7-8). Mirza accumulated 24,915 shares during his time on the board (Mirza Aff., ¶ 12). His Datatrak restricted stock was held in an account with Computershare Trust Company, N.A. (Mirza, Aff. ¶ 13).

On April 4, 2022, Mirza, along with JMP AZ, LLC, initiated an action in this Court against Tabatabai, Tabatabai Investment Partners, LP, and Tabatabai Investment Management, LLC, asserting six state law claims: (i) breach of contract; (ii) conversion, against Tabatabai Investment Partners; (iii) breach of fiduciary duty; (iv) accounting; (v) piercing the veil; and (vi) loan claim – breach of contract. See ECF Doc. 1-1; *see also Mirza. v. Tabatabai Inv. Partners, LP*, No. 1:22-CV-00531, 2023 WL 8480056 (N.D. Ohio Dec. 7, 2023). That case has since been dismissed. *Id*.

On June 8, 2022, 18 months after Mirza's board service concluded, the Datatrak board of directors, then composed of Alex Tabatabai, Dr. Pontea Shabkhiz, and Dr. Ben Tabatabai, resolved to take back the Datatrak stock that had been issued to Mirza pursuant to its "sole and exclusive discretion" under the Compensation Policy. (Tabatabai Aff., ¶ 17; see also ECF Doc. 23-1, Exh. 3, PageID 162). The minutes from that meeting provide:

> The directors then engaged in a discussion of corporate housekeeping matters regarding stock forfeitures for certain parties due to company policies. Following such discussion, and upon a motion duly made and seconded, the directors voted unanimously to approve the following resolutions:
>
> Stock Forfeitures
>
> RESOLVED, that the Board hereby determines in its sole and exclusive discretion that former director Rizvan Mirza engaged in misconduct and other actions that violate the company's policies and would result in stock forfeiture, and therefore 24,915 shares of Company restricted common stock held at Computershare are thus forfeited.
>
> FURTHER RESOLVED, that the authorized officers of the Company are hereby authorized and empowered, for and on behalf of the Company, to take any actions necessary to effectuate the Board's resolution with any third parties such as Computershare, as and if necessary, in connection with any actions contemplated by the foregoing resolutions as they or any of them deem necessary, appropriate or desirable, such actions conclusively to evidence the necessity, appropriateness or desirability thereof; and
>
> FURTHER RESOLVED, that the authorized officers of the Company, and each of them, are authorized and empowered, for and on behalf of the Company, to execute and deliver all such further documents and take all such further actions as they or any of them deem necessary, appropriate or desirable to fully carry out the intent and purposes of the foregoing resolutions, the execution and delivery or taking conclusively to evidence the necessity, appropriateness or desirability thereof.

(*Id.*).

Datatrak then initiated the transfer of the restricted stock issued to Mirza during his time on the board back to Datatrak, pursuant to the fourth bullet point of the Compensation Policy. (Tabatabai Aff., ¶¶ 16, 20). Tabatabai affirms he did not cause Datatrak to retake the stock in retaliation for Mirza's filing of the related lawsuit, *Mirza et al. v. Tabatabai Investment Partners, LP*, et al., Case No. 22-CV-00531, or for any other wrongful purpose. (Tabatabai Aff., ¶ 21).

Mirza's June 22, 2022 account statement from Computershare indicated his holdings' "opening position" of 24,915 shares of restricted Datatrak common stock had been subject to a "vesting transfer" on June 15, 2022, leaving a zero balance. (Mirza Aff., ¶ 14; ECF Doc. 1-3 (Computershare account statement of June 22, 2022)). Mirza contacted Computershare and was told the stock had been transferred back to Datatrak's treasury account. (Compl., ¶ 18).

In his affidavit, Tabatabai describes that he determined Mirza's conduct while on the board was misconduct and reflected poorly upon Datatrak and caused it harm, warranting "the cancellation of Stock or forfeiture of Stock to the Company" pursuant to the Compensation Policy. (Tabatabai Aff., ¶¶ 13, 19). He describes Mirza as disruptive and states that Mirza displayed erratic and emotional behavior at Board meetings, shared confidential information with a Datatrak shareholder, repeatedly demanded that Datatrak's CFO be fired and replaced by his brother, and personally contacted Datatrak management. (Tabatabai Aff., ¶ 13). Tabatabai also states Mirza threatened to quit the board and sell his Datatrak stock, but later changed his mind. (*Id.*).

Mirza refutes Tabatabai's statements through his own affidavits. He states his board term ended naturally and that he left the board voluntarily – he was neither "removed" nor "terminated." (ECF Doc. 26-2, Exh. 2, ("Mirza Apr. 11 Aff."), ¶ 11). At no point during his board term was he informed that he was being disruptive, engaging in misconduct, or had otherwise conducted himself in a manner that would trigger stock forfeiture. (Mirza Apr. 11 Aff., ¶¶ 12-15). Mirza attached to his affidavit retained board minutes, none of which address his conduct during his board tenure. (Mirza Apr. 11 Aff., ¶ 15). Rather, Mirza asserts, he took his board position seriously, including raising issues of CEO compensation. (Mirza Apr. 11 Aff., ¶ 19).

As for Fountayn, Mirza alleges Fountayn is a successor in interest to Datatrak and is liable for Datatrak's obligations. (Compl., ¶ 52). He bases this in part on a pop-up on Datatrak's website stating "As of January 8, 2023 Datatrak is Now Fountayn" with a link redirecting to Fountayn's website. (Compl. ¶ 49). In addition, he alleges that, at the time of filing the Complaint, the Ohio Secretary of State's website nor OTC markets reveal any link between Datatrak and Fountayn, despite Fountayn appearing to be a continuation of Datatrak. (Compl. ¶¶ 50, 53).

Datatrak is an active Ohio corporation in good standing according to the Ohio Secretary of State's website. (Tabatabai Aff., ¶ 22; see also ECF Doc. 23-1, Exh. 6, PageID 165-66). Datatrak remains actively engaged in business and its shares are traded on the OTC Markets, has assets, and is solvent. (Tabatabai Aff., ¶¶ 23-24). Similarly, Fountayn is an active Ohio limited liability company in good standing. (Tabatabai Aff., ¶ 25, ECF Doc. 23-1, Exh. 6, PageID 167-68). Although Datatrak wholly owns Fountayn, Datatrak and Fountayn are separate

> and distinct legal entities. (Tabatabai Aff., ¶ 26; see also Compl., ¶ 48). Tabatabai affirms that Fountayn is not a trade name for Datatrak, and Datatrak did not transfer its operations, business, and assets to Fountayn. (Tabatabai Aff., ¶ 27). He asserts Fountayn was not created in order for Datatrak to escape liability to Mirza or any other creditor. (Tabatabai Aff., ¶ 28).

(R. 30, PageID# 279-284). The parties' objections do not meaningfully contest this recitation of facts, except as discussed below.

### III. Analysis

#### A. Counts Two and Four

Neither side has objected to the Magistrate Judge's Report and Recommendation that summary judgment be entered with respect Counts Two and Four. Notably, Plaintiff's sole objection deals with the R&R's recommendation that Count Three—the unjust enrichment claim—be dismissed. (R. 31). Conversely, Defendant's sole objection relates to Count One, as Defendant maintains the Magistrate Judge should have found summary judgment was warranted with respect to the conversion claim. (R. 32).

The Court finds no clear error and adopts the R&R to the extent it recommends that summary judgment be granted with respect to Counts Two and Four. Summary judgment is entered in Defendants' favor on these two counts. As Defendant Fountayn was only named as a defendant in Count Four, it is hereby dismissed from this action.

#### B. Count Three: Unjust Enrichment

In its motion for summary judgment, Defendant argued that Plaintiff cannot claim "justice and equity" to override the June 1, 2016 Compensation Policy identified in Defendant Datatrak CEO's affidavit. (R. 23, PageID# 149-150). The R&R set forth the following elements of an unjust enrichment, which requires a plaintiff to show that: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the

9

benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." (R. 30, PageID# 293, *quoting Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005)).

Neither side suggests that the Magistrate Judge misidentified the applicable laws governing unjust enrichment actions. The R&R found that a plaintiff cannot recover via unjust enrichment when an express contract covers the same subject matter. *Id*. at PageID# 294 ("This is so because an express contract fixes the parties' contractual relationship, leaving 'no reason or necessity for the law to supply an implied contractual relationship between them.'") (*quoting Bunta v. Superior VacuPress, L.L.C.*, 171 Ohio St. 3d 464, 473, 218 N.E.3d 838 at 848-49 (Ohio 2022)).

The R&R determined that there is an express agreement in place regarding board compensation which forecloses an unjust enrichment claim—namely the June 1, 2016 Compensation policy identified by Datatrak's CEO. (R. 30, PageID# 294). The R&R reasoned that Plaintiff acknowledged the policy in his partial motion for summary judgment, and, by agreeing to serve on Datatrak's board, agreed to have his compensation governed under this policy. (*Id*. *citing* R 24, PageID# 175-76, n. 1). Plaintiff objects to this determination, indicating that he "did not concede the existence of an express agreement, and instead pointed to uncontested evidence that there was no express agreement regarding the revocation of Director compensation." (R. 31).

The Court finds merit in Plaintiff's objection. The cited footnote, on which the R&R relies, cannot reasonably be construed as an admission that the June 1, 2016 Compensation Policy identified by Defendants constituted an express agreement between Plaintiff and Defendants. To the contrary, Plaintiff's footnote merely acknowledged that "Defendants,

pursuant to Rule 26, disclosed a *purported* Board resolution that predated Mirza's service as a Board member, by which the company *claimed* the right to rescind shares awarded in compensation…." (R. 24, PageID# 175, n. 1) (emphasis added). As stated above, the actual evidence presented by Plaintiff—his own affidavit—is unambiguous in its assertion that he had never seen the alleged June 1, 2016 Compensation Policy until it was produced in the current litigation. (R. 26-2, PageID# 213, ¶10). Plaintiff further attested that when he elected to be paid in stock, he was not informed of any vesting schedules or conditions that would have allowed Datatrak to recall or cancel the shares. *Id*. at ¶. While a jury could disbelieve Plaintiff's assertions, this Court must draw all reasonable inferences in favor of the non-moving party; credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are *jury* functions.[2]

The Court cannot find that the June 1, 2016 Compensation Policy existed as a matter of undisputed fact based solely on the affidavit of Defendant Datatrak's CEO, as no corroborating evidence has been offered that would render the existence of such an agreement beyond a genuine dispute of material fact. Moreover, even if the June 1, 2016 Compensation Policy does in fact exist, a plaintiff may maintain actions in the alternative.[3] Finally, assuming

---

[2] While Plaintiff also moved for partial summary judgment, he is the *non-moving* party with respect to Defendants' motion for summary judgment.

[3] The Court agrees with numerous other decisions that allows alternative pleading involving breach of contract and under equitable theories. *See, e.g., Minster MinMun02, LLC v. Vill. of Minster, Ohio*, No. 3:20 CV 1784, 2021 WL 4593088, at *2 (N.D. Ohio Jan. 7, 2021) (denying Rule 12 motion to dismiss promissory estoppel claim noting that plaintiff "may plead promissory estoppel as an alternative to the breach-of-contract claim"); *Krawczyszyn v. Columbian Life Ins. Co.*, No. 1:21 CV 85, 2021 WL 2722514, at *4 (N.D. Ohio June 30, 2021) (recognizing that "a plaintiff may not collect under both a breach of contract and a promissory estoppel" but denying a motion to dismiss because "at the motion to dismiss stage" alternative pleading is permitted); *Salling v. Budget Rent-A-Car Sys.*, No. 1:09-CV-2160, 2010 WL 11565528, at *3 (N.D. Ohio Feb. 19,

arguendo that such a Compensation Policy was indeed passed, it does not follow that it formed an "express agreement" between Plaintiff and Defendants if, as Plaintiff states in his affidavit, he was never informed or put on notice of the material terms of the policy. *See, e.g., 216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008) ("As in most jurisdictions, Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract… What it does require is that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract was clear and unambiguous.") Ultimately, if the evidence presented at trial conclusively establishes the existence of an express agreement, then the R&R's conclusion that an unjust enrichment claim cannot be maintained would be correct.

In their reply in support of summary judgment, Defendants argued for the first time that pursuant to Ohio statute, directors of a corporation are not entitled to compensation unless authorized by a majority vote of the directors. (R. 28, PageID# 268, citing O.R.C. § 1701.60(A)(3) ("The directors, by the affirmative vote of a majority of those in office, and irrespective of any financial or personal interest of any of them, shall have authority to establish reasonable compensation, that may include pension, disability, and death benefits, for services to the corporation by directors and officers, or to delegate such authority to one or more officers or

---

2010) (rejecting defendant's argument that that pleading an unjust enrichment claim in the alternative is only appropriate when uncertainty exists as to the validity of the underlying contract, and denying motion to dismiss); *King v. Hertz Corp.*, No. 1:09 CV 2674, 2011 WL 1297266, at *8 (N.D. Ohio Mar. 31, 2011) (acknowledging that the "existence of an express, valid contract bars an injured party's unjust enrichment claim" but finding that this general ruled does "does not prevent a plaintiff, within his complaint, from pleading both theories of recovery (breach of contract and unjust enrichment)"); c*f. Ragen v. Hancor, Inc.*, 2010 WL 301761, at *4 (N.D. Ohio Jan. 19, 2010) (denying a motion to dismiss a tortious interference claim despite its inconsistency with the plaintiff's alternative theory that a contract existed between the parties).

directors.") Defendants raise a similar argument in their response to Plaintiff's objections. (R. 33, PageID# 317). Defendants assert that Plaintiff cannot claim unjust enrichment to selectively enforce the part of the Compensation Policy that provides for compensation in restricted stock, while disregarding the part of the June 1, 2016 Compensation Policy that provides for forfeiture. (R. 28, PageID# 268).

First, Defendants have cited no authority suggesting that a board director cannot maintain an unjust enrichment claim absent the existence of a compensation policy. Second, as stated above, the Court cannot find as a matter of law there remains no material genuine dispute that the June 1, 2016 Compensation Policy existed and governed Plaintiff's compensation. Plaintiff's affidavit, read as a whole, suggests that an agreement existed by which he would be paid $32,000 annually or an equal amount in stock without any vesting or forfeiture terms. (R. 26-2, PageID# 213, ¶¶7-10). To the extent Defendants maintain that a compensation policy is a prerequisite to an unjust enrichment claim, a jury could find Plaintiff's testimony on the subject credible.

Therefore, the Court declines to adopt the recommendation that summary judgment be granted with respect to Plaintiff's Count Three unjust enrichment claim.

C.  **Count One: Conversion**

Defendants' motion for summary judgment with respect to the conversion claim is premised upon their argument that there is "indisputable evidence [that] … shows that Datatrak duly adopted a director Compensation Policy, and that the stock issued to Plaintiff during his time as a director was lawfully taken back under the Compensation Policy." (R. 23, PageID# 149). Because Defendants' motion for summary judgment with respect to the conversion claim is premised on its ostensible compliance with the purported June 1, 2016 Compensation Policy, the motion is not well taken. As explained above, this Court cannot find that such a policy existed as

a matter of law as there remains a genuine material dispute at the summary judgment stage.

However, assuming for the sake of argument that the existence of the June 1, 2016 Compensation Policy was beyond dispute, summary judgment would not be appropriate. In their reply brief in support of their motion for summary judgment, Defendants argued that they satisfied their summary judgment burden by establishing Plaintiff's restricted stock was forfeited pursuant to Datatrak's Compensation Policy. (R. 28, PageID# 262). Defendants further maintain that Ohio's "business judgment rule" prohibits courts from questioning the wisdom of actions taken by the directors in the absence of evidence of fraud, bad faith, or abuse of discretion. *Id*. at PageID# 263 (citations omitted).

The Court agrees with the R&R's resolution of these issues. The Magistrate Judge observed that Defendants pointed to three portions of the Compensation Policy, which ostensibly supported the forfeiture of the stock Plaintiff received as compensation: (1) where a director is terminated or removed for any reason other than death or disability; (2) where a director engages in misconduct; and, (3) where a director violates a company's policies or engages in any other acts or omissions that reflect poorly upon the company or cause the company any harm. (R. 30, PageID# 290, citing R. 25, PageID# 187-88).

The R&R observes that "[t]he parties agree that [Plaintiff[ was not reelected at the conclusion of his second term. But they disagree as to whether the failure to be reelected constitutes 'removal' for purposes of triggering this clause in the compensation policy." (R. 30, PageID# 291). The Court agrees with the Magistrate Judge's conclusion that "[a] plain reading of the clause would indicate that conclusion of a board term would not constitute "termination" or "removal." *Id*.

With respect to the remaining two clauses, the parties disagree whether Plaintiff engaged

in misconduct sufficient to trigger the second clause, or violated company policy with respect to the third. The evidence presented by Defendant consists solely of Defendant Datatrak CEO's affidavit, and the R&R correctly notes that "Datatrak's allegations are vague and lack contemporaneous documentation, giving the appearance of a pretextual reason for finding Mirza engaged in misconduct or violated company policy warranting forfeiture of his stock." (R. 30, PageID# 291).

Furthermore, Plaintiff's own affidavit, which this Court cannot simply ignore or discredit at the summary judgment stage, states that "[a]t no point during my term on Datatrak's Board of Directors did anyone - Alex Tabatabai [Datatrak's CEO] included - tell me they thought I was being 'disruptive,' that I had engaged in 'misconduct,' or otherwise conducted myself in a manner that would entitle the Board to rescind the shares issued to me in compensation for the service I provided as a Board member." (R. 26-2, PageID# 213). Plaintiff also attested that Minutes from his tenure do not reflect that he was disruptive and attaches two sets of Minutes to his Affidavit. (R. 26-2, PageID# 214, ¶15; R. 26-6 & R. 26-7). With respect to Defendant's contention that Plaintiff "repeatedly demanded that Datatrak's Chief Financial Officer be fired and replaced with Mr. Mirza's brother who was unemployed at the time," (R. 23-1, PageID# 154, ¶ 13c), Plaintiff's affidavit states that text messages and voicemails from Defendant Datatrak's CEO reveals that he believed Plaintiff's sibling had a "Crazy resume!"; that Plaintiff's sibling was "too brilliant for this nonsense" and he was "shocked he even talked to us"; and that "We all know Julia's [the then-current CFO] gotta go. Ray would be a great addition." (R. 26-2, PageID# 213-214, ¶¶13-14).[4] Clearly a factual dispute remains over the question of whether

---

[4] Screenshots of the texts were attached to Plaintiff's affidavit. (R. 26-3 & R. 26-4).

Plaintiff engaged in any misconduct, acts, or omissions that could have justified the forfeiture of his stocks. Therefore, the Court wholly adopts the R&R's determination that "whether or not Mirza concluded his board service in a way that could be defined as triggering the 'terminated or removed for any reason other than death or disability' or the misconduct and company policy clauses are questions for the jury, not for summary judgment." (R. 30, PageID# 291).

Finally, to the extent Defendants have challenged whether Plaintiff had an ownership right and a right of possession, the Court agrees with the R&R again, which found that Plaintiff's retention of the stocks for 18 months after his board service concluded precludes summary judgment in Defendants' favor on this issue. *Id*.

Defendants' objections to the R&R revolve around their contention that the Magistrate Judge did not sufficiently consider the implication of Ohio's "business judgment rule."[5] (R. 32, *citing Maas v. Maas*, 2020-Ohio-5160, ¶ 20, 161 N.E.3d 863, 872 (Ohio Ct. App. 2020) ("Ohio courts adhere to the 'business judgment rule.' Under that rule, courts will not inquire into the wisdom of actions taken by the directors in the absence of fraud, bad faith, or abuse of discretion.")). The Court disagrees. In addition to Defendants' rather vague, conclusory, and unsubstantiated allegations of misconduct which the R&R addressed, the R&R explicitly discusses the business judgment rule and found as follows:

> Datatrak asserts that the decision to create the compensation plan and rescind Mirza's stock compensation is protected by the business judgment rule – that is, protected absent fraud, bad faith, or abuse of discretion (ECF Doc. 25, PageID 189-90), but the timing suggests otherwise. Mirza was not reelected for a third term in October 2020 and concluded his service that December. Mirza's Computershare account rests undisturbed for months, as Mirza receives quarterly

---

[5] Again, the Court only addresses this argument in the alternative. The Court cannot find that the existence of the June 1, 2016 Compensation Policy is an undisputed issue of fact. As such, Defendants' argument—that Datatrak's Board of Directors exercised their business judgment in enforcing that policy—cannot carry the day for Defendants.

> statements showing his Datatrak stock balance. Then, in April 2022, Mirza files a lawsuit in this Court against Tabatabai and his companies; Datatrak is not named in this litigation. And in June 2022 when the board unilaterally decides, in its "sole and exclusive discretion" that Mirza's conduct at some point during his board service from 2016 through 2020, warranted the forfeiture of the stock without warning. This timing suggests a pretextual reason for rescinding the stock into the company's account.

(R. 30, PageID# 292).

The Court agrees with and adopts the Magistrate Judge's disposition on this issue. If there is no evidence to support the allegations of misconduct or other bad acts, a reasonable inference can be drawn that the forfeiture was based on pretextual grounds, which can be tantamount to fraud, bad faith, and/or abuse of discretion. Naturally, the Court does not make any such inference at this stage of the proceedings, but the myriad of factual questions surrounding the forfeiture render summary judgment inappropriate on the basis of the business judgment rule. Defendants' objections are overruled.

## IV. Conclusion

The Court has carefully reviewed the Report and Recommendation (R. 30), which is ADOPTED in part and DENIED in part. Specifically, Plaintiff's Motion for Partial Summary Judgment is DENIED. (R. 24). Defendants' Motion for Summary Judgment (R. 23) is GRANTED in part and DENIED in part. It is granted with respect to Counts Two and Four, but DENIED with respect to Counts One and Three—the conversion and unjust enrichment claims. Further, as explained above, Defendant Fountayn LLC is DISMISSED from this action.

    IT IS SO ORDERED.

Date: March 18, 2025                s/ *David A. Ruiz*
                                                     David A. Ruiz
                                                     United States District Judge